## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELVIN M. MARINKOVIC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:12cv139 |
| | ) | **Electronic Filing** |
| **MAYOR JOSEPH SINNOT**, in his individual | ) | |
| and official capacity, **CITY OF ERIE**, | ) | |
| **COUNTY OF ERIE**, and | ) | |
| **THOMAS C. ROBIE**, in his individual | ) | |
| and official capacity, | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff commenced this § 1983 civil rights action on June 18, 2012, seeking redress for

alleged constitutional violations arising from plaintiff's purchase and ownership of real property

in the City of Erie, Pennsylvania.[1]  Presently before the court are defendant Magisterial District

---

[1] Plaintiff, also known as Mel Marin, is a serial *pro se* filer who has filed vexatious litigation in this court in <u>Mel Marin v. The Erie Times, et al.</u>, 1:11cv102 (Doc. No. 18), <u>aff'd</u>, 525 F. App'x 74 (3d Cir. 2013); <u>In re: Joseph Fragile, et al.</u>, 2:11cv788 (Doc. No. 8); <u>In re: Joseph Fragile, et al.</u>, 2:11cv789 (Doc. No. 7) and <u>Mel Marin v. Tom Leslie, et al.</u>, 2:09cv1453 (Doc. No.s 57 & 58).  He also has filed over 70 proceedings in other jurisdictions and been placed on the "Vexatious Litigant List" by the State of California in connection with a filing in the San Diego Superior Court at No. 720715.  <u>See</u> Transmittal Statement of the Bankruptcy Court to Accompany Notice of Appeal (Doc. No. 1-14) in <u>In re: Joseph Fragile, et al.</u>, 2:11cv789 (W.D. Pa. June 15, 2011) at 6 n.3.  Plaintiff "was once a law clerk in the federal court and a 9th Circuit extern."  Verified First Amended Complaint (Doc. No. 3 in 1:12cv139) at ¶ 112.

Plaintiff also uses different addresses in different states to maintain his pending cases.  He frequently claims not to have received mail at the address he maintains in the court's docket and seeks to reset his own deadlines for compliance with any particular pretrial deadline.  A review of his filings in the related dockets reflect the use of such tactics.  <u>See</u> <u>e.g.</u> Motion for Service (Doc. No. 13 in 1:12cv139); Motion for an Order to Allow Filing of Opposition to Motion to Dismiss Out-of-Time (Doc. No. 17 in 1:12cv139); Notice of and Motion for Leave to Allow Responses to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send Case Management Order and Declaration in Support (Doc. No. 51 in 2:09cv1453) at 1; Notice of and Motion to Supplement Motion for Late Response to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send 2011 Case Management Order (Doc. No. 55 in 2:09cv1453) at 1; Plaintiff's Notice of and Motion for Leave to File a Pre-Trail Statement Out-of-Time (Doc. No.

Judge Thomas C. Robie's motion to dismiss plaintiff's complaint and plaintiff's motion for an extension of time to effectuate service of process and for service by United States Marshal Service.  For the reasons set forth below, Judge Robie's motion will be granted, plaintiff's motion for service will be denied and the action will be dismissed against the remaining defendants for failure to effectuate service in a diligent manner and within the time allotted by the Order of April 3, 2012 (Doc. No. 10 in 1:12cv139).  In addition, plaintiff's claims against the Commonwealth will be dismissed as barred by sovereign immunity.  Plaintiff's claims predicated on the inability to challenge and/or seek review of an adverse ruling on the citation for violation of a city ordinance also will be dismissed as meritless.  Plaintiff's claims predicated on a grossly disproportionate and/or unequal property reassessment will be dismissed for lack of subject matter jurisdiction and without prejudice to plaintiff seeking review of the assessment through the avenues available pursuant to state law.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery.  Id. at 544.  In other words, the allegations of the complaint must be grounded in enough of a factual

---

31 in 2:06cv690) at 1.  The docket verifies that in accordance with the Local Rules all orders and opinions are mailed to plaintiff at the mailing address he has provided for the particular case (which includes a change of address upon proper notification to the Clerk).

basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully."); <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" <u>Phillips</u>, 515 F.3d at 235; <u>see also</u> <u>Wilkerson v. New Media Technology Charter School Inc.</u>, 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting <u>Phillips</u>, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993); <u>Higgins v. Beyer</u>, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." <u>Higgins</u>, 293 F.3d at 688 (quoting <u>Holley v. Dept. of Veterans Affairs</u>, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. <u>McNeil</u>, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without

meaning.  <u>Krantz v. Prudential Investments Fund Management</u>, 305 F.3d 140, 142 (3d Cir. 2002).  It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant."  <u>Id.</u> at 142 - 43 (quoting  Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)).  This principle appears to be even more well-grounded after <u>Twombly</u>.

A summary of plaintiff's complaint follows.  Plaintiff purchased real property from the City of Erie ("the City") at 313 Poplar Street, Erie Pennsylvania.  During much of the ten years preceding the purchase the property had been "assessed" at $25,000.00.  Complaint (Doc. No. 3) at ¶ 5.  Prior to the purchase the property fell into a state of disrepair and the property deteriorated "in value to the point that the house value was reassessed in 2010 at $0 and the lot below it at $250.00." <u>Id.</u> at ¶ 6.  Plaintiff purchased the property for $250.00 in March of 2010 with the understanding that he would repair the home when he had the finances to do it and live in it, subject to selling or renting it at a later date.  Plaintiff did not commit to a timetable for effectuating any repairs.  <u>Id.</u> at ¶¶ 7, 9.  The "house is an historic house older than 100 years and is protected by state and federal laws from haphazard repairs." <u>Id.</u> at ¶ 8.

Two years after plaintiff purchased the home the County of Erie reassessed its tax value at $19,000.00 despite the fact that the property had not been improved in any significant way and was still in the same condition it was in at the time of purchase. <u>Id.</u> at ¶ 9.  The property values of other similar houses were not increased during that taxable year and some actually dropped in value.  Plaintiff's house was thus subject to a $19,000.00 increase above its assessed value when plaintiff purchased it. <u>Id.</u> at ¶ 10.

The County of Erie has a long-standing practice of lowering the tax assessments of houses that are subject to sale by the County for $250.00 and then raising the assessment values after the houses are purchased.  Id. at ¶ 11.  Plaintiff believes this practice prays on ignorant and innocent buyers, is fraudulent and constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.  Id. at ¶¶ 11-14.  The County's unconstitutional scheme also makes the City's taxes unlawful.  Id. at ¶ 15.

The individual County Council members knew or should have known of the assessment practices and that an increase of $19,000.00 on plaintiff's house was illegal.  Id. at ¶ 22.  Or if they knew that the house was actually worth that amount when it was sold to plaintiff, then they permitted County staff to perpetrate a fraud on plaintiff for the purpose of raising tax revenue.  Id. at ¶¶ 26-27.  The scheme was a form of extortion and constitutes unlawful force and threat of battery.  Id. at ¶¶ 28-29.  Plaintiff's "request" to defendants and County staff for an appeal of his reassessment was ignored and the City proceeded on the reassessment.  Id. at ¶¶ 30-32.

Plaintiff received warning of  ordinance violations at the house pursuant to postings on the property.  These potential violations were for uncut grass and litter on the property.  The notice indicated that action might be taken by the City and a lien recorded against the house for the costs of remedying the violations.  Id. at ¶¶ 32-34.  The notice was converted to a citation, which provided plaintiff with the option of pleading guilty, paying $100.00 to enter a plea of not guilty or doing nothing and being subject to arrest.  Id. at ¶¶ 33-34.  All of this was done as part of an elaborate scheme by the County, County Council, the Mayor and the City to perpetrate the extortion scheme, preclude plaintiff from relocating to Erie and to keep him from relocating his business to the City.  Id. at ¶¶ 35-39.  Plaintiff has suffered extensive damages in many different ways as a result.  Id. at ¶¶ 40-49.

All of the above constitutes an actionable form of retaliation in violation of the Due Process Clause. Id. at ¶¶51-52. It also constitutes retaliation in violation of plaintiff's First Amendment right to object to the illegal scheme. Id. at ¶¶ 56, 59. Each of the defendants engaged in a conspiracy to effectuate the retaliation. Id. at ¶¶ 53-60. Plaintiff has suffered extensive damages in many different ways as a result. Id. at ¶ 61.

Magisterial District Judge Robie was assigned to handle the summary proceedings against plaintiff. Id. at ¶ 63. He told plaintiff that he lacked the authority to review the reference of the summary offense for compliance with the Constitution and that his office could not strike down a City ordinance for being unconstitutional. His staff advised that plaintiff could not obtain a waiver of the fee for proceeding with his constitutional challenges, which in turn requires plaintiff to pursue all of his constitutional claims in federal court. Id. at ¶¶ 63-64. Plaintiff seeks declaratory relief against this defendant directing him to recognize that he does have jurisdiction to determine his own jurisdiction, which includes the ability to recognize references of ordinance violations as void for offending constitutional rights and the ability to refuse to proceed on a summary offense for the same reasons. Id. at ¶¶ 65-68. Such a declaration will permit plaintiff to raise his claims in the state system. Id. at ¶ 67. In addition, plaintiff seeks a declaration that because Judge Robie knew or should of known that it was improper to decline to entertain plaintiff's challenges, he was acting well outside his jurisdiction and therefore cannot be protected by judicial immunity. Id. at ¶ 68.

Plaintiff was unable to seek a fee waiver in the Magisterial District Judge's office due to Pennsylvania Summary Rule 422 because plaintiff's formal address was in the state of

California.[2]  Id. at ¶ 70.  This prohibited plaintiff from appealing his claims of constitutionality in

the state system and forced him to come to federal court.  Id. at ¶ 71.  Such a Rule violates the

Privileges and Immunities Clause of the constitution as well as the First Amendment right to

travel.  Id. at ¶¶ 72-73.  It also violates the constitution on numerous other levels, is arbitrary and

fails to serve a governmental interest.  Id. at ¶¶ 74-79.  As a result, plaintiff is entitled to

declaratory and injunctive relief.  Id. at ¶ 80.

Plaintiff is entitled to an injunction notwithstanding Younger v. Harris, 401 U.S. 37

(1971), because plaintiff is not permitted to obtain review of the criminal proceedings in state

court and the state court judge would take an inordinate amount of time to decide the issues.  Id.

at ¶¶ 82-86.  Bad faith also is present and permits this court to bypass Younger and issue an

injunction.  Id. at ¶¶ 87-88.  The City is aware that plaintiff does not reside at the house and is

able to obtain an invalid conviction because the rules require conviction for all persons who are

not physically present and no constitutional challenges to the rules can be made.  Id. at ¶ 89.  In

addition, the initial citation did not give notice of potential criminal sanctions, it only indicated a

lien for costs of repair could result.  Id. at ¶ 93.  The notice was based on an ordinance that did

not actually exist.  Id. at ¶ 94.  The citation did not give fair notice because it permitted a code

enforcement officer or the mayor of Erie to determine what is unsightly and therefore subject to

sanction.  Id. at ¶ 95.  It also permits a Magisterial District Judge to decide what is criminal.  Id.

at ¶ 97.  All of this makes a broad array of innocent conduct criminal and therefore renders the

Uniform Code unenforceable.  Id. at ¶¶ 97-99.

---

[2] The court notes that during the time plaintiff owned the house in Erie he ran for office in that
congressional district and filed a lawsuit when the local newspaper commented on his candidacy.
See generally Mel Marin v. The Erie Times, et al., 1:11cv102 (Doc. No. 18), aff'd, 525 F. App'x
74 (3d Cir. 2013).  Of course, plaintiff claimed to be a Pennsylvania resident in order to pursue
that lawsuit.  See *supra*, n. 1.

The inability to proceed in state court also makes the injury plaintiff has suffered from the ordinance a form of irreparable harm. Id. at ¶¶ 101-103. Having to be convicted before plaintiff can appeal the citation in the state system also constitutes a form of irreparable injury. Id. at ¶¶ 104-11. Thus, plaintiff will suffer irreparable harm if the state proceedings are permitted to ensue and he is entitled to an injunction staying further action on the ordinance. Id. at ¶¶112-14.

Plaintiff's complaint against all unserved defendants will be dismissed for failure to pursue service of process in a diligent manner and to effectuate service in a timely manner. Plaintiff commenced the action on June 18, 2012, by filing a motion to proceed *in forma pauperis*. See Doc. No. 1 in 1:12cv139. He filed a motion for preliminary injunction on July 10, 2012. Id. at Doc. No. 3. He received an order on January 4, 2013, granting his motion to proceed *in forma pauperis*. Id. at 5. That order specifically provided: "Plaintiff shall effectuate service of his complaint on or before April 4, 2013, and is directed to the *Pro Se* Manual within the "Reference Materials" at the Court's Website for further explanation on how to accomplish the same. Failure to effectuate timely service of the complaint may result in dismissal of the action. See Fed. R. Civ. P. 4(m)." Id.

An order was issued on January 4, 2013, denying plaintiff's motion for a preliminary injunction. Id. at 6. Magisterial District Judge Robie filed a waiver of service on April 3, 2013. Id. at 9.

On March 3, 2013, plaintiff moved for additional time to serve his complaint. Id. at 8. Plaintiff claimed to have received late notice of the order issued January 4, 2013, granting him permission to proceed *in forma pauperis* because "the postal service takes months to forward his mail." Id. He requested an additional 90 days to make service. Id.

On April 3, 2013, an order was entered granting in part plaintiff's motion for additional time to make service of process. It provided:

> upon due consideration of (1) plaintiff's Motion to Extend Time to Serve, (2) the "sample" request for waiver of service of summons attached thereto and addressed to "Attorney General Kathleen Kane for the Commonwealth of Pennsylvania," who/which is not a named defendant in the case, and (3) plaintiff's representation that as of March 15, 2013, he has "sent to all defendants requests for waivers of formal service," IT IS ORDERED that [8] the motion be, and the same hereby is, granted in part and denied in part. The motion is granted to the extent is seeks to extend the time to effectuate service for an additional 60 days. Plaintiff shall effectuate service of his complaint on or before June 4, 2013, and again is directed to the *Pro Se* Manual within the "Reference Materials" at the Court's Website for further explanation on how to accomplish the same. Failure to effectuate timely service of the complaint may result in dismissal of the action. See Fed. R. Civ. P. 4(m). The motion is denied in all other aspects.

Order of April 3, 2013 (Doc. No. 10).

On May 17, 2013, plaintiff filed a second motion to proceed *in forma pauperis*. Id. at Doc. No. 12. He also filed the pending motion to have service effectuated by the United States Marshal Service. This motion was predicated on the court granting an additional 30 day extension of time within which plaintiff could provide the Marshal Service with the addresses of the other defendants and then for the Marshal Service thereafter to effectuate service. Id. at Doc. No. 13. Plaintiff once again asserted he did not receive timely notice of the court's orders, claiming he did not receive the order of April 3, 2012, until sometime in the second week of May. Id. at 13. Plaintiff argues that defendants' failure to accept his requests for waiver of summons, the fact that the statute of limitations has not run, the nature of his constitutional claims, and the nature of the defendants' underlying conduct warrants the requested extension of the time to make service and the use of the United States Marshal Service to accomplish the same. Motion for Service by U.S. Marshal (Doc. No. 13) at p. 2-3. He did not submit anything to demonstrate that a waiver for service of process had been sent to any defendant other than the Pennsylvania Attorney General or that any other efforts had been undertaken to serve the other

defendants.

Plaintiff's motion to extend must be denied. A two-pronged inquiry is used to determine whether an extension of time in which to serve should be granted under Rule 4(m). McCurdy v. American Board of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998). "First, the court must determine whether good cause exists for the failure to have effected service in a timely manner. If so, the extension must be granted. If good cause has not been shown, however, the court still may grant the extension in the sound exercise of its discretion." Id. (citing MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1098 (3d Cir. 1995) and Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995)).

"The good cause determination under Rule 4(m) is equivalent to a determination of 'excusable neglect' under Rule 6(b)(2)." Hansen v. Cahn, 2007 WL 1118319, *2 (D. N.J. April 12, 2007) (citing Mettle v. First Union Nat'l Bank, 279 F.Supp.2d 598 (D. N.J. 2003). "Thus, the court considers whether there exists a 'determination of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" Id. (quoting MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086 (3d Cir.1995).

Plaintiff has not shown good cause for a further extension of the time to effectuate service. He was notified of his obligations to effectuate service pursuant to the January 4, 2013, order directing him to undertake that responsibility and referred to a guide for *pro se* filers on how to do so. Pursuant to the Order of April 3, 2013, plaintiff was allotted six months to effectuate service. Plaintiff was directed to the court's *pro se* manual on how to accomplish the same on that occasion as well. He is experienced in proceeding *pro se* and understands legal

concepts and procedure well beyond those who are first-timer filers with little or no experience with the legal system.

Plaintiff's attempt to shove the burden of serving the individual defendants onto the taxpayers is misplaced. Plaintiff attached only a "sample" waiver for service of summons addressed to "Attorney General Kathleen Kane for the Commonwealth of Pennsylvania" as proof that he had attempted to utilize other means to effectuate service. He did not supply anything to establish that he had sought to serve the other individual defendants with a waiver of service of summons. Notwithstanding this shortcoming in his first motion for an extension, this court provided plaintiff with an additional 60 days to make service through a waiver or actual service.

Moreover, plaintiff used a Hermitage, Pennsylvania mailing address in this case from its inception through May 17, 2013; Hermitage is in Mercer County, Pennsylvania, and is approximately a one hour drive from Erie, Pennsylvania. Despite his proximity to Erie for much of the one-year period, plaintiff expended no effort to effectuate actual service of the complaint prior to filing his motion to extend time and have the Marshal Service make service for him. At the time he filed the pending motion, plaintiff had neither attempted to send a waiver of service of summons to the individual defendants nor attempted to have an adult serve these public officials.

It is clear that plaintiff did not employ the reasonable means of effectuating service that were available to him before filing his motion. Consequently, good cause has not been shown for an additional extension of time to effectuate service of process.

Plaintiff's effort to alleviate his obligations to attempt service by filing a motion three weeks prior to the expiration of his extended deadline did not cure his failure to establish good cause for any further extension. Plaintiff's instant submission was once again devoid of any

effort to comply with the court's January 3, 2013, and April 4, 2013, orders.  As of this date plaintiff has yet to do anything to effectuate service on these individuals.  Merely attempting to shift the responsibility to do so onto the Marshal Service at that late date does not provide good cause or a basis for plaintiff to believe further relief automatically will be granted.

The failure to set forth good cause does not end the inquiry.  The court must employ its sound exercise of discretion to determine whether an extension should be granted in any event. The circumstance fail to warrant any further extension.

First, the only thing plaintiff did in the first five months was to send a single request for waiver of summons and service to the attorney general of the state of Pennsylvania.  This was at best a lackadaisical and dilatory effort.

Second, the action appears to be meritless.  Magisterial District Judge Robie contends that he is entitled to dismissal on the basis of immunity.  Consideration of this motion sheds light on the lack of merit in the claims against the remaining defendants.

Specifically, Judge Robie asserts that any claim brought against him in his official capacity is barred by the Eleventh Amendment.  He is not a "person" within the meaning of § 1983 and cannot be held liable for damages.  He enjoys absolute judicial immunity for all acts taken in his judicial capacity.  Plaintiff's request for declaratory and injunctive relief are barred by the Federal Courts Improvement Act of 1996.  And the Rooker-Feldman doctrine bars any review of the state court judgment by this court.  Thus on these grounds Judge Robie seeks dismissal of the action.

Plaintiff maintains that the teachings of Larsen v. Senate of Commonwealth of Pa., 152 F.3d 240 (3d Cir. 1998) and Hafer v. Melo, 502 U.S. 21, 27-28 (1991), demonstrate that immunity is unavailable to Judge Robie.  Immunity cannot be sustained because any act by

Judge Robie was *ultra vires* and therefore was not an official act. The laws upon which he acted were not valid and an action to restrain the enforcement of them can proceed. Further, plaintiff is seeking prospective injunctive relief, which is not barred by the Eleventh Amendment. Judge Robie acted without jurisdiction and therefore his actions were beyond the protections afforded by immunity in any event. The Federal Courts Improvement Act does not bar relief where declaratory relief was unavailable in the state system, and defendant Robie told plaintiff on the telephone that such relief was not available. The Act likewise is inapplicable where the judge acts without jurisdiction. The Rooker-Feldman doctrine does not bar consideration of exclusively federal issues, which is precisely what plaintiff has presented. Finally, the underlying legislation upon which the magistrate judge took action was unconstitutional, and therefore the entire retaliatory scheme and all actions taken pursuant to it may be reviewed and addressed in federal court. Based on these premises, plaintiff maintains that Judge Robie's motion must be denied.

A § 1983 claim provides a vehicle for vindicating a violation of federal rights. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under §1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution or laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing Groman, 47 F.3d at 633)).

In order to establish that a defendant violated a constitutional right, "the exact contours of the underlying right said to have been violated" must be determined. Berg, 219 F.3d at 268

(citing <u>City of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n. 5 (1998)). While plaintiff generally asserts that he was denied his rights to due process and equal protection and subjected to retaliation with regard to a property reassessment and citation regarding his ownership of real property in the City, when the complaint is stripped of its hyperbole and generalized conclusions it fails to set forth little factual detail from which to determine whether plaintiff's rights plausibly were violated. Nevertheless, the court will afford plaintiff the most favorable reading possible in light of his *pro se* status and proceed with the issues raised in Judge Robie's motion.

Plaintiff's claims are predicated on two separate events. One is the re-assessment of the house plaintiff purchased in the City. Plaintiff seeks to establish that the mere act of re-assessment was in itself a violation of his constitutional rights to due process and equal protection. The second is a citation for failure to keep the property in compliance with a City ordinance requiring property maintenance. Plaintiff seeks to obtain declaratory relief that enjoins the enforcement of the ordinance by the local magisterial district judge based on alleged due process, equal protection and First Amendment violations.

Plaintiff's claims against Judge Robie are predicated on his responsibility to review and adjudicate the citation plaintiff received for his property being in unsightly condition. Plaintiff seeks declaratory relief directing Judge Robie to recognize that he does have jurisdiction to determine his own jurisdiction, which includes the ability to recognize references of ordinance violations as void for offending constitutional rights and the ability to refuse to proceed on a summary offense for the same reasons. In addition, plaintiff seeks a declaration that because Judge Robie knew or should of known that it was improper to decline to entertain plaintiff's challenges, he was acting well outside his jurisdiction and therefore cannot be protected by judicial immunity.

Plaintiff's claims against Judge Robie fail for a variety of reasons. First, the claims for declaratory and injunctive relief are not ripe for adjudication. The doctrine of ripeness prevents courts from "entangling themselves in abstract disagreements." Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). "[R]uling on federal constitutional matters in advance of the necessity of deciding them [is to be avoided]." Id. (quoting Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 413 (3d Cir.1992)). Consideration must be given to "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 1462-63 (quoting Abbott Labs., 387 U.S. at 149). In to satisfy these requirements a case must present "'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Id. at 1463 (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971) (quotation omitted). "A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975).

Plaintiff's challenges to the enforcement of the City ordinance are not ripe. All of plaintiff's claims emanate from the efforts to enforce the City ordinance in Magisterial District Judge Robie's court. Plaintiff admits that he never appeared in that court and actually sought to challenge the citation. See e.g. Complaint (Doc. No. 3) at ¶ 80. His challenges are based on the issuance of the citation and telephone conversations with the Magistrate Judge's Chambers about whether he could raise constitutional challenges and seek a fee waiver to appeal any adverse ruling. Whether he would have been denied the ability to raise his purported challenges and/or been permitted to appeal only upon posting of collateral are questions that were not resolved

16

adversely against plaintiff in the state system. Instead, he raced to this court to avoid any

determinations based on his perceived threat of an adverse determination. Thus, plaintiff's

challenges are premature and his claims predicated on these premises are subject to dismissal for

lack of ripeness.

Second, plaintiff's claims against Judge Robie in his official capacity are barred by

Eleventh Amendment. Suits against the state are barred by the Eleventh Amendment.[3] Alabama

v. Pugh, 438 U.S. 781, 781-82 (1978). Eleventh Amendment immunity applies to suits

regardless of the relief sought. In re Kish, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the

'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)); see also Cory v.

White, 457 U.S. 85, 90, (1982) ("It would be a novel proposition indeed that the Eleventh

Amendment does not bar a suit to enjoin the state itself simply because no money judgment is

sought.").

The Supreme Court has held that official-capacity suits "generally represent only another

way of pleading an action against an entity of which an officer is an agent." Kentucky v.

Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dept. of Social Services,

436 U.S. 658, 690 n. 55 (1978)). Suits against a state agency or a state department thus are

considered to be suits against a state which are barred by the Eleventh Amendment. In re Kish,

221 B.R. 118, 124-25 (Bkrtcy. D. N.J. 1998) (quoting Geis v. Board of Educ. of Parsippany–

Troy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir.1985)); accord Hafer v. Melo, 502 U.S. 21,

---

[3] The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable
limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur d'Alene Tribe of
Idaho, 521 U.S. 261, 267 (1997).

25 (1991).  In other words, suits against state officials for acts taken in their official capacity must be treated as suits against the state.  Hafer, 502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather than local entities."  Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 (3d Cir. 2008) (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240-41 (3d Cir. 2005) and Pa. Const. art. V, § 1)).  It is likewise settled that "Pennsylvania's judicial districts ... are entitled to Eleventh Amendment immunity."  Id.

The magisterial district courts are part of the Commonwealth's unified judicial system.  Erb v. Judge, 1994 WL 523203, *1-2 (E.D. Pa. Sept. 23, 1994).  The Commonwealth's unified judicial system encompasses "the courts and other officers or agencies of the unified judicial system," including "any one or more of the judges of the court . . . ."  42 Pa. C. S. § 301(4).  They thus are "an arm of the state by Pennsylvania law."  Erb, 1994 WL 523202 at *2;  cf. Callahan v. City of Philadelphia, 207 F.3d 668, 672 (3d Cir. 2000) ("All courts and agencies of the unified judicial system, including the Philadelphia Municipal Court, are part of 'Commonwealth government' and thus are state rather than local agencies.") (citing Pa. Const. art. V, § 6(c); 42 Pa. C. S. § 102 (West Supp. 1999); 42 Pa. C. S. § 301 (West 1981)).  As such, official actions by these entities are protected by Eleventh Amendment immunity.  Cf. Chilcott v. Erie County Domestic Relations, 283 Fed. Appx. 8, 10 (3d Cir. 2008) ("Furthermore, the District Court properly dismissed the suit against the Erie County Prison and the Erie County Domestic Relations Section of the Erie County Court of Common Pleas because the Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens.").

The magisterial districts are subunits of Pennsylvania's unified judicial system. The magisterial districts are a state entity. Immunity attaches to the actions of the magisterial district in question pursuant to the Eleventh Amendment. Accordingly, all of plaintiff's claims against this entity and its judge for official acts must be dismissed.

Immunity from suit also applies to judicial officers in the performance of their official duties, thereby relieving them from liability for judicial acts. Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9 (1991)). Furthermore, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)). "The doctrine of judicial immunity applies equally to courts of limited jurisdiction, such as district justices, as to courts of general jurisdiction." Martin v. Bicking, 30 F. Supp.2d 511, 512 (E.D. Pa. 1998) (citing Schmidt v. Degen, 376 F. Supp. 664 (E.D. Pa. 1974); Schuler v. City of Chambersburg, 641 F. Supp. 657 (M.D. Pa. 1986); and Horne v. Farrell, 560 F. Supp. 219 (M.D. Pa. 1983)).

While plaintiff makes numerous assertions that Judge Robie clearly acted *ultra vires* and without jurisdiction, these assertions do not rest on facts that make the contention colorable. A basis for some subject matter jurisdiction over the proceeding in question is sufficient to cloak the actions taken by a judicial officer with immunity, even if the officer exceeds the boundaries of that jurisdiction. Figueroa v. Blackburn, 208 F.3d 435, 443-44 (3d Cir. 2000) (citing Barnes v. Winchell, 105 F.3d 1111, 1122 (6th Cir. 1997) ("Generally, therefore, 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"). And the

demarcation between an act taken in excess of jurisdiction and one without it are relatively clear.

As the Supreme Court has observed:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump, 435 U.S. at 357 n. 7.

Assuming Judge Robie did tell plaintiff that he lacked the authority to declare the City ordinance unconstitutional or unenforceable and plaintiff is correct that he does have the authority to do so, such a decision would merely be an action taken in error. Pennsylvania's Judicial Code clearly gave the magisterial district court and in turn Judge Robie some subject matter jurisdiction over the proceedings involving a citation for violation of the City's ordinance. See 42 Pa. C. S. § 1515. The facts alleged simply fall short of demonstrating that Judge Robie acted in the absence of all jurisdiction. The same is true with regard to any statements by his staff concerning the need to post security to appeal an adverse ruling. Consequently, Judge Robie is entitled to the protections of judicial immunity and plaintiff's claims against him must be dismissed.

Plaintiff's efforts to sue the Commonwealth in order to have "Summary Rule 422, 4-23 (360843) N. 451 Jun. 12" declared unconstitutional because it does not permit a waiver of the fee needed to take an appeal is without merit for the same reasons. The Commonwealth has not waived its sovereign immunity as to liability arising from the application of the Rules of Criminal Procedure to summary offenses before a magisterial district judge.

Moreover, plaintiff conveniently fails to account for the entirety of Pennsylvania's Rules of Criminal Procedure of Summary Cases. Read as a whole, Rules 454(E)(2), 460, and 461

permit an appeal from an adjudication of guilt on a summary offense based on a violation of an ordinance and do not condition the filing of that appeal upon payment of the penalty imposed by the magisterial district judge. Rule 462 authorizes trial *de novo* in the appropriate court of common plea, which in turn provides for the ability to appeal any adverse ruling to Pennsylvania's Superior Court. See Rule 462(G)(2). Thus, plaintiff's contention that he cannot obtain review of his constitutional defenses in the state court system is belied by the very system of rules he seeks to challenge. As a consequence, this branch of plaintiff's claims collapses under its own weight.

Plaintiff likewise cannot proceed on his due process and equal protection claims predicated on a grossly disproportionate and unequal assessment of his house. The Tax Injunction Act divests this court of subject matter jurisdiction over all such claims.

The Tax Injunction Act (the "Act") provides that:

> [t]he district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax where a plain, speedy and efficient remedy may be had in the court of such State.

28 U.S.C. § 1341. This statute "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976). As a result, the Supreme Court has "read the act quite broadly." Behe v. Chester County Board of Assessment Appeals, 952 F.2d 66, 68 (3d Cir. 1991).

The act has been applied in scope to exclude virtually all challenges to state and local taxation that are commenced in federal court. Id. (citations omitted). The act precludes injunctive relief and/or declaratory judgments. Id. (citing California v. Grace Brethren

<u>Church</u>, 457 U.S. 393, 408 1982)).  As a result, "the Court has woven an almost impenetrable barrier to state tax challenges in federal courts."  <u>Id.</u>

This court is divest of jurisdiction as long as Pennsylvania provides "a plain, speedy and efficient remedy" to any challenge to the assessment of which plaintiff complains.  <u>Id.</u> "The Supreme Court has explained that the 'plain, speedy and efficient remedy' exception was designed to require that the state remedy satisfy certain procedural criteria; the State remedy need not be the best or most convenient one."  <u>Id.</u> (citing <u>Rosewell v. LaSalle National Bank</u>, 450 U.S. 503, 512 (1981)).  A "plain, speedy and efficient remedy" will be found if the state allows the taxpayer to raise all objections at a full administrative hearing and thereafter permits the taxpayer to appeal to the higher state courts.  <u>Id.</u>  Faithfulness to the congressional intent "to limit drastically" federal court interference with state tax systems requires that the "plain, speedy and efficient" exception to the Tax Injunction Act be construed narrowly.  <u>Id.</u> (quoting <u>Sipe v. Amerada Hess Corp.</u>, 689 F.2d 396, 404 (3d Cir.1982) (quoting <u>Grace Brethren Church</u>, 457 U.S. at 417)).

The causes of action and procedural avenues to appeal tax assessments available in Pennsylvania provide an adequate remedy and thus supply a plain, speedy and efficient remedy for challenges to disproportionate or unequal tax assessments.  <u>Id.</u>  First, the Pennsylvania Constitution's "uniformity clause" "provides a cause of action in Pennsylvania courts for Pennsylvania taxpayers who claim that their property has been assessed at a higher percentage of fair market value than have other properties in their County."  <u>Id.</u> (citing <u>McKnight Shopping Center, Inc. v. Bd. of Property Assessment, Appeal & Review</u>, 209 A.2d 389, 392 (Pa. 1965.   The Pennsylvania Constitution also "contains a counterpart to the U.S. Constitution's Equal Protection clause."  <u>Id.</u> (citing Pa. Const. Art. I § 6 ("Neither

the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.")). The Pennsylvania Supreme Court has held that the two clauses stand on equal footing. Id. at 68-69 (citing Love v. Borough of Stroudsburg, 597 A.2d 1137, 1139 (Pa. 1991) ("The equal protection provisions of the Pennsylvania Constitution are analyzed by this Court under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution."). The United States Court of Appeals for the Third Circuit has reached the same conclusion as to claims predicated on unequal assessment values. Id. at 69 (citing Garrett v. Bamford, 582 F.2d 810 (3rd Cir.1978) ("[W]e fail to perceive any relief which appellants can request through a federal claim bottomed on the Fourteenth Amendment that is not guaranteed them by Pennsylvania's Constitution, statutes, and case law.").

Second, the Supreme Court of Pennsylvania has recognized that the power to tax is limited by both the Pennsylvania and the United States Constitutions. Id. (citing McKnight Shopping Center, Inc., 209 A.2d at 392 n. 4 ("[a]bsent the uniformity clause in our State Constitution, the 14th Amendment of the Federal Constitution would protect taxpayers of the same class from discriminatory treatment in violation of their right to equal protection of the laws."). Thus, taxpayers complaining of taxation in violation of the Fourteenth Amendment likewise can invoke the Constitution of the United States to the extent the precise matter raised is not encompassed within Pennsylvania's uniformity clause. Id.

Third, the uniformity clause permits all types of challenges to uniformity within a county assessment scheme. Id. The lack of uniformity may be established by proving that "the actual value of other taxpayers' properties is different from that determined by the

assessors." Id.  Where such proof establishes that other comparable properties are assessed below fair market, the uniformity clause requires that the taxpayer's assessment be lowered to below fair market value as well.  Id. at 70.  In other words, "the 'uniformity clause' mandates that '[a]s between the standard of actual value and the standard of uniformity, uniformity must prevail.'"  Id. (quoting Valley Forge Golf Club, Inc. v. Bd. of Assessment & Revision of Taxes, 285 A.2d 213, 216 (Pa. Commw. Ct. 1971)).

Finally, Pennsylvania law provides adequate procedure and process to satisfy the "plain, speedy and efficient remedy" clause of the Tax Injunction Act.  A dissatisfied taxpayer may file an appeal with the Board of Assessment Appeals.  Id. (citing 72 P.S. § 5349(c)).  Notice of hearings is required "and the Board may 'compel the attendance of witnesses and the furnishing of documents.'"  Id. (quoting 72 P.S. § 5349(d)).

Constitutional challenges may be raised as long as they are first presented to the Board of Assessment.  Id.  Such challenges may then be pursued "up through the state court system."  Id.

The Court of Common Pleas exercises de novo review over decisions of the Board. Id. (citing 72 P. S. § 5350).  The court is authorized to make "such orders and decrees that seem just and equitable having due regard to the valuation and assessment made of other real estate in such county or city."  Id. (quoting 72 P.S. § 5020–518.1).  This authority encompasses the ability to enjoin the collection of taxes where the assessment is unconstitutional until such time that county or city officials rectify the situation through the process of reassessment.  Id.  "A litigant whose arguments fail in the Court of Common Pleas may appeal within the State court system and, with regard to federal Constitutional

arguments, ultimately to the Supreme Court of the United States." Id. at 70-71 (citing Long v. Kistler, 524 F. Supp. 225 (E.D. Pa. 1981)).

Here, plaintiff's claims are predicated on a disproportionate assessment following the purchase of the property and the lack of a comparable assessment being placed on other similar properties, resulting in those properties enjoying a lower and even lowered assessments at the same time. Such allegations fall squarely within the uniformity clause and the Pennsylvania system has the ability to entertain plaintiff's due process and equal protection challenges predicated on the United States Constitution in any event. Because plaintiff has a "plain, speedy and efficient remedy" in the Pennsylvania system this court lacks jurisdiction to entertain the branch of plaintiff's claims predicated on the imposition of a disproportionate and/or unequal tax assessment on the real property plaintiff chose to purchase in the City. Consequently, all of plaintiff's claims in this realm must be dismissed for want of jurisdiction.

Finally, given the backdrop above, plaintiff's interweaving of a First Amendment retaliation claim in his complaint is unavailing. The claim as presented draws on two areas of §1983 jurisprudence. First, plaintiff must be able to satisfy the substantive due process component of his claim that the grossly disproportionate and unequal increase in assessment was done pursuant to an unlawful scheme that violates the Fourteenth.

"The touchstone of due process is the protection of the individual against arbitrary action of government." Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). Where a member of the executive branch is alleged to have engaged in abusive action, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. at 375 (quoting County of Sacramento v. Lewis, 523

U.S. 833, 845 (1998)).  To generate liability the conduct "must be so ill-conceived or malicious

that it 'shocks the conscience.'"  Id.

The "shocks the conscience" standard is not self-executing.  Lewis, 523 U.S. at 845.  It

nevertheless serves as "the beginning point in asking whether or not the objective character of

[the conduct in question] is consistent with our traditions, precedents, and historical

understanding of the Constitution and its meaning."  Id. at 857 (citing Lewis, 523 U.S. at 1722

(Kennedy, J., concurring)).

Beyond plaintiff's bald and unsubstantiated conclusions, the complaint does not contain

any facts to support plaintiff's contention that the increase was part of a diabolical scheme to

hoodwink taxpayers and artificially increase their taxes.  And even assuming the assessment

rendered two years after purchase was grossly disproportionate and unequal, such executive

action simple cannot arise to the level of malfeasance or intentional conduct that shocks the

judicial conscience.

Moreover, even venturing into an adjudication of such matters would be an intrusive

undertaking barred by the Tax Injunction Act.  Before this court could entertain such a claim

plaintiff would have to pursue his disproportionate and unequal assessment claim in state court

and prevail on it.  Cf.  Merkle v. Upper Dublin School District, 211 F.3d 782, 792 (3d Cir. 2000)

(a plaintiff must be able to satisfy the following elements to pursue a § 1983 claim for malicious

prosecution: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding

ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the

defendants acted maliciously or for a purpose other than bringing the plaintiff to justice."  Id.

(citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir.1996)).  Plaintiff has not alleged that he

pursued his disproportionate and unequal assessment claim in state court and prevailed. To the contrary, plaintiff admits that he has not even attempted to do so.

Second, the plaintiff must satisfy the components of the claim that bring it within the scope of the First Amendment (and thus § 1983). Id. at 792 (outlining the Third Circuit's development of a malicious prosecution claim in the aftermath of Albright v. Oliver, 510 U.S. 266 (1994)). In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Id. at 793 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir.1997)).

Plaintiff cannot plead facts that plausibly show the second element of this component of a First Amendment retaliation claim can be satisfied. No facts are alleged that make it plausible that either the citation for an ordinance violation or the tax reassessment were imposed for an improper purpose. Saying it is so in a conclusive fashion does not supply the facts necessary to make such a claim plausible. Furthermore, plaintiff has not been barred from pursuing review of his tax assessment claim. No improper impediment to such a review has been visited upon plaintiff. Plaintiff likewise has not been impeded in any improper manner from seeking review of the citation. Plaintiff has not even attempted to appear before Magisterial District Judge Robie, defend against the citation and appeal any adverse determination, should there be one.

In short, the allegations of the complaint make clear that plaintiff cannot allege the presence of a form of retaliatory action sufficient to deter a person of ordinary fitness from seeking relief from an erroneous local tax assessment or an improper citation for violation of a

city ordinance.  Consequently, plaintiff's attempt to invoke the First Amendment is without merit.

For the reasons set forth above, plaintiff's claims against the Commonwealth and Judge Robie will be dismissed.  Plaintiff's claims against all other defendants will be dismissed for failure to pursue and perfect service of process diligently and in a timely manner.  In addition, plaintiff's claims predicated on the inability to challenge and/or seek review of an adverse ruling on the citation for violation of a city ordinance also will be dismissed as meritless.  Plaintiff's claims predicated on a grossly disproportionate and/or unequal property reassessment will be dismissed for lack of subject matter jurisdiction and without prejudice to plaintiff seeking review of the assessment through the avenues available pursuant to state law.

Although a portion of plaintiff's claims must be dismissed without prejudice, the court finds that plaintiff's pursuit of the instant litigation is without foundation.  Plaintiff has experience in the legal field and has filed numerous § 1983 cases.  He is well aware of the need to explore the avenues of relief available to him before raising constitutional issues and to research matters in good faith before filing suit.  Against this backdrop his pursuit of this lawsuit is vexatious and filed for vindictive and obstructive purposes.  Doing so is an attempt to exploit the ability to proceed *in forma pauperis* and the taxpayers are not obligated to fund his fanciful escapade.

Date: March 25, 2014

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge


cc:     Mel M. Marin
        General Delivery
        1001 Frederick Road
        Catonsville, MD 21228

(*Via First Class Mail*)

Caroline Liebenguth, Esquire

(*Via CM/ECF Electronic Mail*)